**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRYAN JOSEPH MINCEY, | No. 15-56264 |
| Petitioner - Appellant, | D.C. No. 2:93-cv-02554-PSG |
| v. | |
| RON DAVIS, Warden of California State Prison at San Quentin, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted November 7, 2016
Pasadena, California

Before: O'SCANNLAIN, FERNANDEZ, and RAWLINSON, Circuit Judges.

Petitioner-Appellant Bryan Joseph Mincey (Mincey) appeals the district court's denial of his habeas claims challenging his conviction. The district court issued a certificate of appealability for Mincey's claim challenging the exclusion of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

certain evidence regarding Sandra Brown (Brown), his girlfriend and co-defendant. We subsequently ordered the state to address uncertified ineffective assistance of counsel claims.

Certified Claim

**1.** The trial court properly excluded evidence of Brown's prior drug use and child abuse as cumulative. "[W]ell established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. *See, e.g.*, Fed. Rule Evid. 403. . ." *Holmes v. South Carolina*, 547 U.S. 319, 326-37 (2006) (parallel citations omitted); *see also* Cal. Evid. Code § 352.

The parties agreed that Brown abused the child victim on the night of the child's murder. As a result, the trial court granted the prosecution's motions *in limine* to exclude evidence of Brown's prior drug use and child abuse. The trial court noted that, for every witness Mincey presented to demonstrate Brown's prior bad acts, the prosecution could present an equal number of witnesses attesting to Mincey's prior drug use and child abuse. Courts may limit the number of witnesses to avoid cumulative evidence. *See Holmes*, 547 U.S. at 326-27. The trial judge's decision to avoid "mini-trials on collateral issues" is consistent with due process. *Nevada v. Jackson*, 133 S. Ct. 1990, 1993 (2013) (citation omitted).

<u>Uncertified Claims</u>

Because "jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further," we expand the certificate of appealability to include the ineffective assistance of counsel claims discussed below. *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citation omitted).

**2.** Mincey's counsel did not render ineffective assistance by calling Dr. Oliver as a witness to focus on one particular strategy (lack of intent) to the exclusion of others. Counsel reasonably believed that Dr. Oliver would testify that Mincey lacked intent to kill the child victim, and made a tactical decision to challenge the intent element of the charges against Mincey by calling Dr. Oliver as a witness. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . ." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). We may not second-guess that tactical decision. *See id*. The district court's denial of this claim was not contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 688 (1984).

**3.** Defense counsel consented to the playing of three unredacted interviews between Mincey and sheriff's deputies. The tapes included disparaging statements made by the deputies accusing Mincey of lying and of sexually abusing

the deceased child. Admission of these unredacted tapes was part of a comprehensive trial strategy to convey the coercive atmosphere in which Mincey's statements were taken. The trial court admonished the jury that the questions from the deputies were not evidence, and that the deputies lied to Mincey during the interrogation. Counsel's tactical election to permit the jury to hear the untrue statements made by the deputies to impugn the interrogation process negates any potential ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 689 (explaining that "sound trial strategy" falls within the wide range of reasonable effective assistance). In addition, the trial judge's "cautionary instructions are presumed to have cured prejudicial impact." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015) (citation and alterations omitted).

4.     The coroner testified that in his opinion, the child victim died from massive blunt injuries and, before death, likely suffered from shock and metabolic acidosis (an acid buildup in the body). The coroner also conducted a toxicology test, with no positive results for amphetamines or any other narcotics. Years later, Dr. Pablo Stewart, a psychiatrist, evaluated the coroner's testimony and autopsy reports, and questioned whether the metabolic acidosis was caused by physical trauma or amphetamine ingestion. "To the extent that this new testimony contradicts the prosecution's expert testimony, it's simply a difference in opinion. .

. ." *Gimenez v. Ochoa*, 821 F.3d 1136, 1142 (9th Cir. 2016) (citations omitted). Further, the coroner never isolated metabolic acidosis as the cause of death. Rather, the coroner noted metabolic acidosis as a complication arising from massive blunt trauma. Unlike prior Ninth Circuit cases where it was *plain* that further investigation would have undermined the government's case, *see Duncan v. Ornoski*, 528 F.3d 1222, 1235-36 (9th Cir. 2008), here counsel could have had reason to be skeptical of the state toxicology report. Counsel's strategic decision to focus his time on other aspects of the case was therefore not "unreasonable under prevailing professional norms." *Id*. at 1235.

5.     Dr. Stewart's opinion, without more, did not warrant an evidentiary hearing. We need not grant an evidentiary hearing if Mincey's factual allegations, taken as true, are insufficient to entitle him to relief. *See Gonzalez v. Knowles*, 515 F.3d 1006, 1014-15 (9th Cir. 2008). Even if Mincey were able to show that Dr. Stewart's opinion would have instilled doubt into the mind of a juror at trial, thus avoiding a guilty verdict, he would not be entitled to relief because he cannot show that his lawyer's decision against pursuing that strategy was unreasonable. There is no "quantum of . . . evidence" that Mincey could reveal at an evidentiary hearing to undermine his lawyer's decision, as opposed to the coroner's conclusion. *Id*. at 1014.

Neither was Dr. Stewart's opinion sufficient to establish that the coroner testified falsely or that the prosecution presented false testimony. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). "Introducing expert testimony that is contradicted by other experts, whether at trial or at a later date, doesn't amount to suborning perjury or falsifying documents; it's standard litigation. . . ." *Gimenez*, 821 F.3d at 1143.

**AFFIRMED.**